**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DARRIN S.

                              Plaintiff,

      - v -                                        1:17-CV-791
                                                       (DJS)

COMM'R OF SOC. SEC.,

                              Defendant.

**APPEARANCES:**                            **OF COUNSEL:**

DARRIN S.
Plaintiff, *Pro Se*
Hudson, New York 12534

U.S. SOCIAL SECURITY ADMIN.          PADMA GHATAGE, ESQ.
OFFICE OF REGIONAL GENERAL COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION and ORDER[1]

In this action, Plaintiff moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying his application for Supplemental Security Income Benefits ("SSI") and Disability Insurance Benefits ("DIB"). Presently pending are Plaintiff's and Defendant's Motions for Judgment on the Pleadings pursuant to this Court's

---

[1] Upon Plaintiff's consent, the United States's general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 4 & General Order 18.

General Order 18. Dkt. Nos. 15 & 16. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is **denied** and Defendant's Motion for Judgment on the Pleadings is **granted**. The Commissioner's decision denying Plaintiff disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Background

Plaintiff, born on May 3, 1964, filed an application for DIB and SSI on March 4, 2014. Dkt. No. 8, Admin. Transcript ("Tr."), p. 63. Plaintiff initially claimed an onset date of August 30, 2013, which he later amended to January 14, 2014, and a date last insured of December 31, 2018. Tr. at pp. 52 & 198. Plaintiff alleged disability due to fused bones in his neck, and due to neck, hip, and back pain. Tr. at p. 151. Plaintiff completed the ninth grade, and has past work as a doorman in a residence hall and as a laborer for a retailer. Tr. at p. 152. Plaintiff's claim was denied on June 11, 2014. Tr. at p. 78. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and on October 23, 2015 a hearing was held before ALJ Mary Sparks. Tr. at pp. 86-87 & 28-51. Plaintiff was represented by counsel and testified at the hearing. Tr. at pp. 28-51. On January 25, 2016, ALJ Sparks issued an unfavorable decision finding Plaintiff not disabled. Tr. at pp. 9-27. On May 18, 2017, the Appeals Council concluded there was no basis to review the ALJ's decision, thus rendering the ALJ's decision the final determination of the Commissioner. Tr. at pp. 1-6. This action followed.

### B. The ALJ's Decision

ALJ Sparks first found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018, and had not engaged in substantial gainful activity since August 30, 2013, the alleged onset date. Tr. at p. 14. The ALJ found that Plaintiff had the following severe impairments: mild diffuse degenerative changes of the lumbar spine; degenerative changes of the cervical spine; history of polysubstance abuse, in partial remission; anxiety; and depression. *Id.* The ALJ next found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments, specifically considering Listings 1.04, 12.04, 12.06, and 12.09. Tr. at pp. 15-16. The ALJ determined that Plaintiff has a residual functional capacity ("RFC") to

> lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for approximately six hours total in an eight hour workday and sit for approximately six hours total in an eight hour workday and would require the option to sit or stand alternatively at will provided he was not off task more than 10% of the work period; he can occasionally climb ladders, scaffolds; he can never climb ropes; he can never crawl; he can [ ] frequently reach and would be limited to low stress jobs defined as those having no more than occasional decision-making required and no more than occasional changes in the work setting.

Tr. at p. 16-21. The ALJ next found that Plaintiff is unable to perform any past relevant work. Tr. at pp. 21-22. The ALJ found that Plaintiff was 49 years old on the alleged disability onset date, which is defined as a younger individual age 18-49, but that he subsequently changed age category to closely approaching advanced age. Tr. at p. 22. The ALJ next found that Plaintiff has a limited education and is able to communicate in English,

and that transferability of job skills is not an issue in this case because his past relevant work is unskilled. *Id.* The ALJ then found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, based on the testimony of a Vocational Expert ("VE"). *Id.* at pp. 22-23. As such, the ALJ concluded that Plaintiff was not disabled during the period at issue. Tr. at p. 23.

### C. The Parties' Cross-Motions

#### 1. *Plaintiff's Pro Se Status*

While Plaintiff was represented by counsel before the ALJ and during his appeal to the Appeals Council, he now proceeds *pro se*.[2] As such, although Plaintiff's memorandum of law is sparse and lacks a fully developed argument, the Court construes Plaintiff's contentions liberally and has performed its own searching inquiry of the ALJ's determination for any errors. This is because "submissions by *pro se* litigants are to be liberally construed," and construed "to raise the strongest arguments that they suggest." *Smith v. Comm'r of Soc. Sec.*, 2014 WL 3392336, at *4 (N.D.N.Y. July 10, 2014) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) & *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Moreover, the Court must "not disregard obvious legal errors, even though a lay litigant's ignorance of the law may cause such errors to go unrecognized," and "always must engage in a 'searching inquiry' when deciding whether substantial evidence supports an

---

[2] The Court gave Plaintiff one and a half months to submit a brief, and when none was received, the Court on its own initiative granted Plaintiff another three months to submit a brief, which the Court received at the end of that period. Dkt. Nos. 12, 14, & 15.

administrative fact finding, whether or not a *pro se* litigant is perceptive enough to identify a specific evidentiary deficiency." *Id.* (citing *Monette v. Astrue*, 269 Fed. Appx. 109, 110 (2d Cir. 2008)).

### *2. The Parties' Contentions*

In his Motion, Plaintiff contends that the RFC found by the ALJ is not supported by substantial evidence, and that the ALJ improperly relied on portions of the treating physician's opinion without explaining why she did not accept all of it. Dkt. No. 15, Pl.'s Mem. of Law, p. 2. In particular, Plaintiff asserts that the ALJ's credibility finding is inconsistent with the objective findings in the record. Pl.'s Mem. of Law at p. 4.

Defendant contends that the ALJ properly evaluated the medical evidence and assessed the RFC, by properly exercising her discretion in resolving the evidentiary conflicts, and by properly evaluating the medical source opinion evidence, including the treating source opinion. Dkt. No. 16, Def.'s Mem. of Law, pp. 4-5. Defendant contends that the limitations found by the ALJ were well supported, and describes the support for those findings. *Id.* at pp. 5-11. Defendant also contends that the ALJ properly evaluated Plaintiff's credibility, in reviewing the medical records and Plaintiff's reported activities. *Id.* at pp. 11-13. Finally, Defendant contends that the ALJ's step five finding was supported by substantial evidence, as the ALJ presented her RFC finding to the vocational expert ("VE"), who rendered an opinion based on that hypothetical. *Id.* at pp. 13-14.

## II.  RELEVANT LEGAL STANDARD

### A.  Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla" of evidence scattered throughout the administrative record; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *see also Williams ex. rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex. rel. Williams v. Bowen*, 859 F.2d at 258. "If supported by substantial evidence, the Commissioner's finding must be sustained, even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 200 (N.D.N.Y. 2012) (citation omitted) (internal quotation marks omitted).

The ALJ must set forth the crucial factors supporting the decision with sufficient

specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d at 258; 42 U.S.C. § 405(g). However, where the weight of the evidence does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Standard to Determine Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. §§ 416.920 & 404.1520. At Step One, the Commissioner "considers whether the claimant is currently engaged in substantial gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the claimant is not engaged in

substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at §§ 416.920(c) & 404.1520(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, Part 404, Subpart P of the Regulations. *Id.* at §§ 416.920(d) & 404.1520(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment, the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id.* If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the RFC[3] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. §§ 416.920(e) & (f), 404.1520(e) & (f). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. §§ 416.920(g) & 404.1520(g).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to

---

[3] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations." 20 C.F.R. § 416.945(a).

the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id*.; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. §§ 416.920(g) & 404.1520(g); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### III. ANALYSIS

#### A. The ALJ's Analysis in Steps One Through Three

As described above, in light of Plaintiff's *pro se* status, the Court has performed a searching inquiry of each step of the ALJ's decision to determine whether it is supported by substantial evidence.

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. at p. 14. This finding is supported by the wage and employment data in the record for this time period. *See* Tr. at pp. 139-46. At Step Two, the ALJ found that Plaintiff had the following severe impairments: mild diffuse degenerative changes of the lumbar spine; degenerative changes of the cervical spine; history of polysubstance abuse, in partial remission; anxiety; and depression. Tr. at p. 14. The ALJ found these impairments are established by the medical evidence and cause more than minimal limitation in Plaintiff's ability to perform basic work activities. *Id.* This is

supported by the record. *See*, *e.g.*, Tr. at pp. 255, 247-48, & 535-40. Next, at Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. at p. 15. The ALJ found that Plaintiff's impairments of the spine did not meet listing 1.04 because the record did not indicate any of the findings needed to meet it. *Id.* This determination is supported by the record. The ALJ also found that Plaintiff's mental impairments considered singly and in combination did not meet or equal the criteria of listings 12.04, 12.06, or 12.09 because Plaintiff's mental impairments did not result in at least two of the required categories. In making this finding, the ALJ performed a thorough review of the record, and her findings are based on substantial evidence. Tr. at pp. 15-16.

### B. The ALJ'S RFC Analysis

#### *1. The ALJ's Analysis of Plaintiff's Credibility*

In determining whether a claimant is disabled, the ALJ must make a determination as to the credibility of the claimant's allegations of pain. Plaintiff specifically objects to the ALJ's treatment of his allegations regarding pain. Pl.'s Mem. of Law at p. 4. "An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the

[Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting v. Astrue*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)).  Due to the fact that "the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference.  *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Here, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible.  Tr. at p. 17.

In making this determination, the ALJ referred to imaging results that confirm the presence of degenerative disc disease, but the findings of which are generally mild.  Tr. at p. 18.  These include x-rays of the lumbar spine, a more recent MRI of the lumbar spine, imaging of the right hip, imaging of the sacrum and coccyx, MRI of the cervical spine, a CT scan of the head and cervical spine, an MRI of the left knee, and an x-ray of the left shoulder. *Id.* at pp. 17-18.  The ALJ described that physical examination findings also do not support Plaintiff's allegations of disabling pain.  Tr. at p. 18.  The ALJ described that the notes

generally found Plaintiff was capable of working within the limitations of the RFC: the record frequently showed unrestricted range of motion in the hips, shoulders, and spine including the neck; Plaintiff frequently exhibited no tenderness in the back; walked with a normal gait; and demonstrated good balance and coordination. *Id.* The ALJ also referenced notes from Plaintiff's visits to the emergency room, which indicate only minor restrictions. *Id.*

In addition, the ALJ pointed to notations in the record of Plaintiff's medication noncompliance, including abnormal drug screens and Plaintiff's violations of his pain contract. Tr. at pp. 18-19. The ALJ also considered the findings of Consultative Examiner Kautilya Puri, M.D., whose findings were inconsistent with some of Plaintiff's testimony, particularly regarding weakness in his hands. Tr. at p. 19. The ALJ also found Plaintiff's testimony not credible regarding his mental impairments. Tr. at pp. 19-20. The ALJ noted that Plaintiff did not consistently seek mental health treatment, but that when he did, he presented with relatively mild impairments. Tr. at p. 19. The ALJ also noted that other treating sources described a mental capacity that would support an ability to work within the RFC assigned by the ALJ. Tr. at pp. 19-20. Finally, the ALJ noted that Plaintiff received unemployment benefits after his alleged onset date, the application for which requires a certification that he was able to work, which is inconsistent with Plaintiff's allegations of disabling symptoms. Tr. at p. 20.

The ALJ considered the criteria set forth in 20 C.F.R. §§ 404.1529 and 416.929 in determining the impact of Plaintiff's described symptoms on his RFC. Tr. at pp. 17-20. ALJ

Sparks has provided "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" regarding the credibility of Plaintiff's statements. As such, the ALJ's finding regarding Plaintiff's credibility is supported by substantial evidence.

### 2. *The Assigned RFC*

In determining Plaintiff's RFC, the ALJ thoroughly examined the record and weighed the various medical opinions. The ALJ gave some weight to the medical source statement of Consultative Examiner Kautilya Puri, M.D. Tr. at p. 19. Dr. Puri assessed no limitations regarding Plaintiff's gait or activities of daily living, and mild limitations in squatting, bending, stooping, kneeling, overhead reaching, and lifting weights. Tr. at p. 21. While the ALJ found that her findings were generally consistent with the treating evidence, and demonstrated that Plaintiff is capable of working within the residual functional capacity, the ALJ found that some additional exertional and postural activities were required to accommodate Plaintiff's ongoing degenerative disc disease and pain symptoms. Tr. at p. 19. The ALJ cited to Dr. Puri's findings regarding Plaintiff's physical abilities, describing his normal gait, ability to stand on his heels and toes, and full range of motion of the cervical spine, shoulders, and hips; Dr. Puri further noted straight leg raises that were bilaterally negative and intact neurological examination, and demonstrated intact hand and finger dexterity and full grip strength bilaterally, indicating inconsistency with Plaintiff's testimony regarding weakness in his hands. Tr. at pp. 19-20.

The ALJ gave significant weight to the opinion of Dr. Anna Assevero, Plaintiff's

treating physician.[4] The ALJ did not credit the opinion that Plaintiff could have no exposure to environmental elements because there was no indication those limitations were caused by any underlying medically determinable impairment, and noted that the opined ability to balance was not supported by the medical record. Tr. at p. 20. The ALJ also did not credit Dr. Assevero's limitation of Plaintiff to simple tasks, because there was no indication that Plaintiff was incapable of carrying out complex instructions when he was able to understand and remember them. *Id.* The ALJ elaborated that those limitations were couched in vague terms such as "mild limitations" and provided limited value in assessing Plaintiff's RFC. *Id.*

The ALJ gave some weight to the medical source statement of Dr. Hartman, the psychological consultative examiner. *Id.* Dr. Hartman found Plaintiff would have mild difficulty performing complex tasks independently and making appropriate decisions, and assessed mild to moderate difficulty relating adequately with others and moderate problems dealing appropriately with normal stressors of life. *Id.* The ALJ gave these findings limited weight because they were based "purely upon self-reporting by the claimant and are not supported by the overall record, which shows inconsistent treatment for his allegedly disabling mental symptoms." *Id.*

The ALJ described that, regarding Plaintiff's mental impairments, Plaintiff's mental status examinations demonstrated average eye contact, thought content and cognition within

---

[4] Dr. Assevero opined that Plaintiff could lift and carry occasionally up to 10 pounds, sit 6 hours, stand 4 hours, and walk 3 hours total in an eight hour day; that Plaintiff could never push or pull with his hands and only frequently engage in all other manipulative activities; he could occasionally operate foot controls, occasionally climb stairs and ramps and stoop, but never perform any other postural activities; and that Plaintiff could only have occasional exposure to humidity and wetness but never any other environmental exposure. Tr. at pp. 535-40.

normal limits, normal insight, clear speech and normal perception, only mild impairments in his ability to make reasonable decisions, cooperative attitude, and circumstantial and concrete thought with poverty of content. They also revealed a constricted and labile affect, questionable judgment, mistrust, and impairments in his memory and ability to abstract. Tr. at p. 19. The ALJ noted that Plaintiff did not consistently seek mental health treatment, and was discharged from a mental health center due to unresponsiveness to outreach attempts, which was later reopened at his request, and then he failed to attend any sessions, missing two scheduled sessions. *Id.* The ALJ further considered that other treating sources have consistently noted a normal affect and cooperative behavior, inconsistent with allegations of disabling depression and anxiety; in addition, during the psychological consultative examination, Plaintiff demonstrated generally intact attention and concentration, and although he had fair to poor judgment, the examiner found he had average intellectual functioning and fair insight, and assessed a fair prognosis. Tr. at pp. 19-20.

The ALJ found that the assigned RFC is supported by the medical record as a whole, including the relatively benign clinical findings on examination and conservative treatment prescribed by Plaintiff's doctors, and, to the extent Plaintiff contended he could not work within the RFC, the allegations were not fully credible. Tr. at p. 21. The ALJ analyzed Plaintiff's credibility extensively, as discussed above in Point III.B.1. Tr. at pp. 17-19.

The ALJ also noted that Plaintiff received unemployment benefits after his alleged onset date, the application for which requires a certification that he was able to work, available for work, and actively seeking work. Tr. at p. 20. The ALJ found that the extent

to which Plaintiff's polysubstance abuse affected his mental or physical conditions was unclear, and that the treating evidence does not indicate that his RFC would improve materially with sustained sobriety. *Id.*

### 3. The ALJ's Treatment of the Treating Physician Opinion

Where conflicts arise in the medical evidence, their resolution is properly entrusted to the Commissioner. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). By explaining why she discounted certain aspects of Plaintiff's treating physician's opinion, including due to inconsistency with other opinions in the record and with the medical evidence of record, "the ALJ applied the substance of the treating physician rule," and provided "'good reasons' for the weight she g[ave] to the treating source's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004). While the ALJ did not explicitly review each factor in 20 C.F.R. §§ 404.1527(c) and 416.927(c), the ALJ properly assessed the regulatory factors—"[w]here, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review each and every factor of the regulation." *Perry v. Comm'r of Soc. Sec.*, 2017 WL 5508775, *4-5 (N.D.N.Y. Jan. 23, 2017), *aff'd*, *Perry v. Berryhill*, 711 Fed. Appx. 9 (2d Cir. 2017) (citing *Atwater v. Astrue*, 512 Fed. Appx. 67, 70 (2d Cir. 2013)).

In addition, the ALJ is not required to give the entirety of an opinion the same amount of weight. *Kikta v. Comm'r of Soc. Sec.*, 2016 WL 825259, at *9 (N.D.N.Y. Feb. 9, 2016) (citing *Pellam v. Astrue*, 508 Fed. Appx. 87, 89 (2d Cir. 2013)); *see also Dirisio v. Comm'r of Soc. Sec.*, 2016 WL 7378930, at *4 (N.D.N.Y. Dec. 20, 2016) ("In formulating a plaintiff's

RFC, an ALJ is not required to adhere to the entirety of one medical source's opinion.") (citing *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013)); *Wilburn v. Colvin*, 2016 WL 1237789, \*4 (N.D.N.Y. Feb. 29, 2016) (finding that the ALJ was not obligated to incorporate all of a physician's limitations into the RFC where he afforded the opinion "significant, but not great weight"). Again, instead, the ALJ has the responsibility of reviewing all the evidence before him, resolving inconsistencies, and making a determination consistent with the evidence as a whole. *Bliss v. Colvin*, 2015 WL 457643, at \*7; *accord Petell v. Comm'r of Soc. Sec.*, 2014 WL 1123477, at \*10 (N.D.N.Y. Mar. 21, 2014). The ALJ properly explained why, although she generally gave Plaintiff's treating provider's opinion significant weight, she gave certain portions of the opinion little weight.

### C. The ALJ's Analysis of Plaintiff's Ability to Perform Work

Having found that there was substantial support for the RFC, as well as to support the ALJ's analyses of Plaintiff's credibility and the treating physician's opinion, the Court will review the ALJ's Step Four and Five findings regarding his ability to perform past relevant work, and that jobs exist in the economy that Plaintiff can perform. At Step Four, the ALJ found that Plaintiff has past relevant work as a laborer, stores, medium as generally performed and very heavy as actually performed; cleaner, commercial institutional, heavy as generally performed, heavy as actually performed; and doorkeeper, medium as generally performed and light to medium as actually performed. Tr. at pp. 21-22. Utilizing the Dictionary of Occupational Titles ("DOT"), the VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC would be unable to perform any of those jobs.

Tr. at pp. 46-47. The ALJ accepted that testimony and found Plaintiff could not perform any past relevant work. Tr. at p. 22. Given the RFC adopted by the ALJ, this finding is amply supported by the record.

At Step Five, the ALJ utilized the assigned RFC in asking a hypothetical to the VE, and the VE found that jobs existed in the economy which Plaintiff could perform with that RFC. As Defendant points out, the ALJ's hypothetical deviated from the RFC in that the hypothetical only limited Plaintiff to frequent reaching with his left arm, instead of both arms as indicated by the RFC. However, as Defendant points out, this error is harmless because according to the DOT and Selected Characteristics of Occupations, only frequent reaching is required for the jobs identified by the VE. As such, the VE's conclusions which were based on the properly supported RFC were supported by substantial evidence. In addition, the VE properly supported her findings, by identifying that her sources came from the DOT, and that her findings would be consistent with the DOT, the SCO and the supporting publications. Tr. at pp. 44-50; *see, e.g.*, *Galiotti v. Astrue*, 266 Fed. Appx. 66, 68 (2d Cir. 2008) ("The vocational expert identified the sources he generally consulted to determine such figures. [Plaintiff] has not pointed to any applicable regulation or decision of this Court requiring a vocational expert to identify with greater specificity the source of his figures or to provide supporting documentation."). As such, the ALJ's Step Four and Five findings were proper.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

Date: September 21, 2018
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge